Levy v. Corey.

# City Court.

*Trial Term—February, 1884.*

## ALBERT A. LEVY *against* JAMES H. COREY.

**Inn-keeper and guest.**—Where a guest is taken ill at a hotel, with a contagious disease, the proprietor, after notice, has the right to remove the guest in a becoming manner to a hospital or other place of safety, or may make any reasonable agreement for extra compensation. The agreement, however, must be voluntarily made. If the hotel-keeper takes advantage of the misfortune, and by threats amounting to duress, unlawfully exact money from the guest or her husband, it may be recovered back.

The action was brought to recover back $2,500 paid to the defendant, the proprietor of the Hotel Bellevue, at Bellevue, near Seabright, N. J., when the latter threatened to remove the plaintiff from the hotel in the summer of 1882. The plaintiff's claim was, that while his wife was confined to her room, and danger-ously ill with typhoid fever, which she had contracted at the defendant's hotel, Captain Corey, the defend-ant, at about three o'clock in the morning made noisy preparations, declaring it his intention to remove her from the hotel to an out-house where the servants slept, unless $2,500 was paid by Mr. Levy. A check for the money was then given.

Captain Corey, as a defense, set up a denial that the

money was obtained by threats, and claimed that it was given upon an amicable arrangement made between the parties. The case excited considerable interest, and a number of the guests were examined, as well as the Board of Health of Monmouth county, and other officials of that place.

## CHARGE TO THE JURY.

McADAM, Ch. J.—"This action is of importance, not only to hotel-keepers, particularly those keeping summer resorts, and whose patronage, limited as it is to about three summer months, must, in the nature of things, depend largely upon the healthfulness and reputation of their house and its surroundings, but also to that portion of the general public who seek health, fresh air and recreation during that period in country places where they expect, according to their circumstances, to recuperate mind and body. With this admonition, given to exact careful deliberation on your part, 1 will, without reciting the facts detailed to you by the evidence, and commented upon by counsel in their summing up, content myself by submitting to you the legal propositions on which you are to find. I charge you, as matter of law—

"First. That where a guest is taken ill at a hotel, with a contagious disease, likely to be communicated to others, the proprietor, after notifying the sick guest to leave, has the right to remove such guest in a careful and becoming manner, and at an appropriate hour, to some hospital or other place of safety, provided the life of the guest be not imperiled thereby. This is not only a right inherent in the hotel-keeper, but a duty owing to the other guests, and to the preservation of the public health.

"Second. If the hotel-keeper exercises these rights at an improper time, or in an illegal and unbecoming

Levy *v.* Corey.

manner, he is liable, therefor, on the ground of neg-ligence, or for abuse of authority.

"Third. The hotel-keeper has the right, under the circumstances before detailed, to make any reasonable arrangement for extra compensation, the amount of which is left largely to the mutual agreement of the parties in interest, and when they mutually agree in respect thereto, the law will infer, that the price agreed upon is fair and just, and the burden of pioving the contrary is on him who alleges imposition, or undue advantage. The agreement, to be legal, however, should be voluntary, and the result of mutual assent in respect to which the minds of both parties should meet.

"Fourth. If, however, the hotel-keeper, not con-tent to join in an agreement founded on mutual assent, determines to take advantage of the misfortune which has occurred in his house, makes threats to remove the guest when not in a condition to be removed, or threatens to remove such guest at a time or in a man-ner not warranted by the circumstances, and by force of such threats exacts from such guest, or her husband, a sum of money arbitrarily named by him, and not fixed by voluntary assent, nor warranted by the exi-gencies of the occasion, he commits a wrong which the law will not tolerate ; he has exacted the money so obtained by duress, and acquires no title to it, and it can be recovered back by the person from whom it was wrongfully exacted.

"Fifth. I do not tell you their was either duress or imposition in this case, that is a question exclusively for you. If there was no duress, and the money was voluntarily paid, or paid by force of the exigencies of the occasion, and without unlawful threats or restraint, it will be your duty to find a verdict in favor of the defendant.

"Sixth. If, on the other hand, you find that there

were threats made by the defendant to remove the guest at an improper time, or in an improper manner, and the defendant had the means of carrying these threats into execution, and the plaintiff, fully believing that the defendant meant to put them in execution, and had just reason to believe that the execution of such threats would result in death to his wife, the plaintiff, as her husband and protector, had the right to pay the sum demanded, without losing his privilege of suing the defendant to recover back the money paid, on the ground that the payment was not voluntarily made, but was the sole result of coercion, duress and fear. If, therefore, you find that the money was paid under these circumstances, and solely by reason of coercion, duress and fear, exercised and caused by the defendant, you may find a verdict in favor of the plaintiff for the amount claimed.

" Seventh. Dispose of this case conscientiously, without fear, favor or prejudice, and let the result of your conscientious convictions be recorded in the verdict you may render. We do not sit to teach lessons nor to punish people merely because they have acted differently from what we might have done under similar circumstances. We sit to pass on the legal rights of litigants and to deal out that justice, simple and pure, which the facts, as established by the evidence, entitle them to. Do this in the present instance, without regard to consequences."

The jury retired at 5 P. M. on Tuesday, they were locked up till 11:30 of that evening, and came into court on Wednesday, saying they were unable to agree, and were discharged.

Both sides acquiesced in the law as laid down by the court.

Upon the second trial of the action the jury found in favor of the plaintiff.